Filed 12/3/18

**CERTIFIED FOR PARTIAL PUBLICATION\***

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH CHRISTOPHER LAVOIE,<br><br>    Defendant and Appellant. | E068328<br><br>(Super.Ct.No. BAF1500967)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. W. Charles Morgan, Judge. Affirmed in part, reversed in part, and remanded for resentencing.

Ron Boyer, under appointment by the Court of Appeal, for Defendant and Appellant.

_____

\*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III, IV, and V.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, and A. Natasha Cortina and Amanda E. Casillas, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant accosted a stranger in a parked car, forced him to turn over his car keys at gunpoint, and told him, "This ain't your car no more." He also took the victim's cell phone. When defendant was arrested, he was in possession of a handgun with a 15-round-capacity magazine.

After a jury trial, defendant was found guilty on three counts: (1) second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)), with a personal firearm use enhancement (Pen. Code, § 12022.53, subd. (b)); (2) unlawful possession of a firearm (Pen. Code, § 29800, subd. (a)(1)); and (3) receiving a large-capacity magazine (Pen. Code, §§ 16740, 32310, subd. (a)).

In a bifurcated proceeding, after waiving a jury trial, defendant admitted two "strike" priors (Pen. Code, §§ 667, subds. (b)-(i), 1170.12), two prior serious felony enhancements (Pen. Code, § 667, subd. (a)), and two prior prison term enhancements (Pen. Code, § 667.5, subd. (b)).

As a result, defendant was sentenced to a total of 71 years 4 months to life.

Defendant does not challenge his conviction of the substantive offenses. All of his appellate contentions relate to the enhancements and the strikes.[1] Most significantly, he

---

[1] Defendant has filed a related habeas petition (case No. E069526). We ordered the habeas petition considered with (but not consolidated with) this appeal for the

contends that the trial court erred by allowing the prosecution to amend the prior conviction allegations after the jury had already been discharged. As will be seen, we agree as to one of the strikes; otherwise, we disagree. Accordingly, we will strike that one strike and remand for resentencing.

I

STATEMENT OF FACTS

A.    *The Allegations of the Information.*

The information alleged the following prior convictions:

1.  As prior prison term enhancements:

a.  On February 25, 2010, in Riverside County, for assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).)

b.  On March 5, 2010, in Riverside County, for assault with a deadly weapon in prison. (Pen. Code, § 4501, subd. (a).)

2.  As prior serious felony conviction enhancements:

a.  On February 25, 2010, in Riverside County, for assault with a deadly weapon.

b.  On March 5, 2010, in Riverside County, for assault with a deadly weapon in prison.

3.  As strike priors:

---

purpose of determining whether an order to show cause should issue. We will rule on the petition by separate order.

3

a. On April 26, 2007, in Riverside County, for assault with a deadly weapon.

b. On February 25, 2010, in Riverside County, for assault with a deadly weapon.

Note that the conviction that was alleged *first* as a prison prior and a prior serious felony was alleged *second* as a strike. Also, the conviction that was alleged second as a prison prior and as a prior serious felony was not alleged as a strike at all; the first strike was a completely different conviction.

B. *Defendant's Waiver of a Jury Trial.*

The trial on the priors was bifurcated. After the jury retired to deliberate, defendant waived a jury trial on the priors. In taking defendant's waiver, the trial court stated:

"THE COURT: . . . [¶] . . . [T]here are two prison priors alleged in the information and two strike priors. They are one and the same. You know that. But they are alleged in a different fashion. You understand that; right?

"THE DEFENDANT: Yes."

As noted, however, this was not correct.

Later that day, the jury returned its verdict of guilt and was discharged.

C. *The Trial Court's Advisements.*

On the date set for a court trial on the priors, defense counsel indicated that defendant was willing to admit them. The trial court advised defendant:

4

"THE COURT: . . . [Y]ou are charged with two priors. One way is a prison prior pursuant to 667.5(b). The other way is a serious felony, 667(a). And the third way is strike priors. So there are three ways the priors are alleged.

"Understood?

"THE DEFENDANT: Yes, sir.

"THE COURT: The 667.5(b) priors add an additional year if convicted of those. The serious felonies add five, and the strike prior adds a life term.

"Understood?

"THE DEFENDANT: Yes."

The trial court went on:

"THE COURT: All right. You have a right to have me decide whether or not these priors are true, and whether or not you committed these priors.

"Do you wish to waive or give up that right?

"THE DEFENDANT: Yes.

"THE COURT: . . . [Y]ou have a right to cross-examine any and all witnesses the People put up to prove that these priors exist, and that they are your priors.

"You wish to waive or give up that right; is that right?

"THE DEFENDANT: That is correct.

"THE COURT: You have a right to show that these priors don't exist or they're not your priors.

"You wish to waive or give up that right; is that correct?

5

"THE DEFENDANT:  Yes.

"THE COURT:  And, lastly, you have a right to testify at that trial in any defenses that they aren't your priors or they don't exist.

"You wish to waive or give up that right; is that correct, sir?

"THE DEFENDANT:  Yes."

D.     *The Amendment of the Information and Defendant's Admissions*.

Next, the trial court started to ask defendant to admit the prison priors.  Defendant volunteered, however, and both counsel confirmed, that the date March 5, 2010 was erroneous and should have been July 24, 2013.  The trial court therefore ordered:

"THE COURT:  As to the second-prior offense, as to the second-serious prior offense, as [to] the second strike, on People's motion, I shall, by interlineation, strike 'March 5, 2010,' and substitute in that place 'July 24th, 2013,' as to all three."

This was a mistake.  It was the first strike that needed to be amended, not the second strike.

The trial court resumed asking defendant to admit the prison priors.  This time, however, defendant volunteered, and the prosecutor confirmed, that the place of the July 24, 2013 conviction was also erroneous and should be San Diego County.  The trial court ordered:

"THE COURT:  . . . I'm going to amend the second-prior offense, as to the second-serious prior offense, and second strike to allege that the convictions were had in the County of San Diego, state of California."

6

This was another mistake. Once again, it should have amended the first strike, not the second strike.

The trial court resumed asking defendant to admit the prison priors, which he did. Next, it asked him to admit the prior serious felonies, which he also did.

Finally, it began asking him to admit the strikes. At this point, it seemed to realize that it was actually the first strike that needed to be amended. It ordered:

"THE COURT: The first strike prior, I shall amend the date by interlineation and striking 'April 20th, 26th' — whatever it is — '2007,' to 'July 24th, 2013.'"

It went back to asking defendant to admit the strikes. The prosecutor interrupted, however, to say that the second strike should actually be for assault with a deadly weapon in prison. The trial court stated:

"THE COURT: . . . The second-strike prior shall be amended as assault with a deadly weapon in prison, in violation of 4501 of the Penal Code."

Again, this was a mistake (this time induced by the prosecutor), because there was nothing wrong with the second strike. It was the first strike that needed to be amended.

The trial court went back to asking defendant to admit the strikes. However, it expressed confusion about where the first strike occurred. The prosecutor said, "[T]he prior from February 25th of 2010, that's Riverside County. And the conviction from July 24th of 2013 is San Diego." The trial court did not expressly order any more amendments.

7

The trial court's interlineation of the information did not entirely track its orally ordered amendments. After the interlineations, the strike allegations looked like this:

"FIRST PRIOR, a conviction on or about ~~April 26, 2007~~ **7/24/13** in the Superior Court of the State of California, for the County of Riverside, for the crime of ASSAULT WITH A DEADLY WEAPON . . . **weapon in prison** in violation [of] Penal Code section ~~245~~ **4501**, subdivision (a)~~, subsection (1)~~ . . . .

"SECOND PRIOR, a conviction on or about **Riv** ~~February 25, 2010~~ in the Superior Court of the State of California, County of Riverside, for the crime of ASSAUTL [*sic*] WITH A DEADLY WEAPON . . . , in violation of Penal Code section ~~245, subdivision (a), subsection (1)~~[2] **SD** . . . ."

Thus, the first strike was correctly alleged, except that the place should have been San Diego County. The second strike was also correctly alleged, except that it had no date or Penal Code section and it had the extraneous notations "Riv" and "SD."

Defendant admitted the strikes as follows:

"THE COURT:  . . .  Is it true . . . that on or about July 24, 2013, in the county of San Diego, you were convicted of assault with a deadly weapon, in violation of 4501 of the Penal Code, a strike?

"THE DEFENDANT:  Yes.

_____

**2**     At this point, "4501" was written in but then crossed out again.

8

"THE COURT: Is it also true that on or about February the 25th of 2010 in the . . . county of Riverside, you were convicted of the crime of assault with a deadly weapon, in violation of section 245, subdivision (a), subsection (1), a strike?

"THE DEFENDANT: Yes."

Defense counsel never objected.

## II

## AMENDMENT OF THE INFORMATION AFTER THE JURY WAS DISCHARGED

Defendant contends that, once the jury was discharged, the trial court lost the power to amend the information. He asks us to reach this issue despite his trial counsel's failure to object to the amendment. In the alternative, he contends that his trial counsel's failure to object constituted ineffective assistance.

Defendant relies on *People v. Tindall* (2000) 24 Cal.4th 767. There, the jury found the defendant guilty of the charged offense. He waived a jury trial on the prior conviction allegations, and the trial court discharged the jury. Thereafter, however, the prosecution discovered additional prior convictions. Thus, it moved to amend the information. (*Id*. at p. 770.) The trial court granted the motion over the defendant's opposition. (*Id*. at pp. 770-771.) A new jury found the prior conviction allegations to be true. (*Id*. at p. 771)

The court phrased the issue before it as follows: "[W]hether a postverdict amendment to an information to add prior conviction allegations is permissible before

9

sentencing but after the jury has been discharged." (*People v. Tindall*, *supra*, 24 Cal.4th at pp. 769-770.)

It then held: "[I]n the absence of a defendant's forfeiture or waiver, [Penal Code] section 1025, subdivision (b) requires that the same jury that decided the issue of a defendant's guilt 'shall' also determine the truth of alleged prior convictions. Because a jury cannot determine the truth of the prior conviction allegations once it has been discharged [citation], it follows that the information may not be amended to add prior conviction allegations after the jury has been discharged. Thus, under the circumstances of this case, we find that the postdischarge amendment, which increased defendant's prison sentence from four years to 25 years to life, was erroneous." (*People v. Tindall*, *supra*, 24 Cal.4th at p. 782.)

On reading *Tindall*, one might well ask: Why did the defendant still have the right to have the same jury decide the amended prior conviction allegations under Penal Code section 1025, when he had already waived his right to a jury trial on the priors?

We have found only one post-*Tindall* case that deals with the amendment of prior conviction allegations after the jury has been discharged. Fortunately, it answers this question.

In *People v. Gutierrez* (2001) 93 Cal.App.4th 15, the defendant waived a jury trial on allegations that he had prior convictions in California. The jury found him guilty and was discharged. The trial court then found the prior conviction allegations true. (*Id*. at p. 20.) Later, the prosecution moved to amend the information to allege a prior

10

conviction in Nevada.  (*Ibid*.; see also p. 21.)  The defendant objected, but the trial court granted the motion.  A new jury found the new prior conviction allegation true.  (*Id*. at p. 21.)

The appellate court held that the trial court erred by allowing the amendment.  (*People v. Gutierrez*, *supra*, 93 Cal.App.4th at pp. 21-24.)  It declared, "*Tindall* applies here."  (*Id*. at p. 23.)  It noted that the defendant was arguing that "he waived his right to the same jury only on the alleged priors, and not on the post-jury-verdict added prior. . . . Basically, he claims the waiver was not voluntar[il]y and knowingly entered as to the unalleged prior."  (*Ibid*.)  "Defendant essentially argues . . . that a waiver as to alleged priors has no effect with respect to newly discovered unalleged priors."  (*Ibid*.)  It then stated, "We agree with defendant's interpretation . . . ."  (*Ibid*.)  "Defendant only waived his statutory right to have the same jury decide . . . the truth issue on the *California* prior allegations.  Defendant did not object to the discharge of the jury because the Nevada state robbery conviction had not yet been alleged."  (*Id*. at p. 24.)

Under *Gutierrez*, then, a waiver of a jury trial on the prior convictions that are alleged in the original information is not effective — as a matter of law — as to entirely new prior conviction allegations that are added by amendment later.

Earlier case law fleshes out this reading of *Gutierrez.*  It has been held that, if prior conviction allegations are amended in substance after a defendant has already waived a jury trial on them, then the waiver goes out the window.  (*People v. Hopkins* (1974) 39 Cal.App.3d 107, 116-117; *People v. Luick* (1972) 24 Cal.App.3d 555, 557-559; see also

11

*People v. Walker* (1959) 170 Cal.App.2d 159, 165-166 [amendment of allegations regarding the offense].)  However, if the amendment is only typographical, the jury waiver may stand.  (*People v. Gary* (1968) 263 Cal.App.2d 192, 197; see also *People v. Williams* (1980) 106 Cal.App.3d 15, 19 [amendment of allegations regarding the offense]; *People v. Smylie* (1963) 217 Cal.App.2d 118, 122 [same].)

Consistent with this case law, the People argue that "the corrections to the priors were so minor that there was no violation of Penal Code section 1025."  (Capitalization altered, bolding omitted.)  In support, they cite *People v. McQuiston* (1968) 264 Cal.App.2d 410.  There, the defendant was charged with petty theft with a prior.  The alleged prior was for petty theft on April 20, 1954 in Los Cerritos.  At the beginning of trial, this allegation was amended to a conviction for petty theft on February 7, 1951 in Long Beach.  (*Id*. at pp. 412, 416-417.)  Ultimately, the trial court ruled that there was insufficient evidence to support the amended allegation; thus, the defendant was found guilty of only misdemeanor petty theft.  (*Id*. at pp. 412, 413.)

On appeal, however, the defendant argued that "since she was not rearraigned on the amended information and did not enter a plea thereto, it was error to proceed with the trial."  (*People v. McQuiston*, *supra*, 264 Cal.App.2d at p. 416.)  The appellate court disagreed:  "The charge remained the same, and it is apparent from the record that the error in date and court was the result of a simple clerical or typographical mistake . . . . While the statute [citation] requires rearraignment and a new plea on an amended information, it is well established that where the amendment relates only to minor

changes it is not mandatory. [Citations.] Here the timely correction of the mistake did not change the nature of the offense charged, only the date [citations] and place of the conviction [citations]. (*Id*. at p. 417.)

Defendant responds that *McQuiston* is irrelevant, for three reasons. First, he argues that *Tindall* did not make any exception for "minor" amendments. *Tindall*, however, was expressly limited to its facts. It involved an amendment that was indisputably substantial — it increased the defendant's sentence from only 4 years to 25 years to life. Moreover, the court held only that allowing the amendment was erroneous "*under the circumstances of this case*." (*People v. Tindall*, *supra*, 24 Cal.4th at p. 782, italics added.) Even had it not, "'[i]t is axiomatic that cases are not authority for propositions not considered.' [Citation.] 'The holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning.' [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 684.)

An exception for minor amendments follows from the reasoning in *Tindall*, as elaborated in *Gutierrez*. *Tindall* held that the amendment there resulted in a violation of the defendant's statutory right to have the same jury determine both guilt and the truth of the prior conviction allegations. This implicitly (but necessarily) means that the defendant's waiver of a jury trial on the original prior conviction allegations did not extend to the amended allegations. *Gutierrez* made this explicit. However, in both *Tindall* and *Gutierrez*, the amendment was substantial — it added new prior conviction

13

allegations, and thus it exposed the defendant to additional punishment. As discussed, when a defendant has waived a jury trial on prior conviction allegations, and when the prior conviction allegations are amended typographically and not substantially, the waiver remains binding. This is an exception to *Tindall*.

Second, defendant points out that *McQuiston* was decided before *Tindall*. *Tindall*, however, did not expressly overrule *McQuiston* nor any of the cases dealing with minor amendments that *McQuiston* cited. Moreover, because *Tindall* involved a substantial amendment, and because it was limited to its facts, it did not overrule these cases implicitly, either.

Third, defendant argues that *McQuiston* is not on point, because there, the amendment occurred before the jury was discharged; hence, the case did not raise any question as to whether the amendment violated the defendant's statutory rights under Penal Code section 1025. Indeed, the trial court dismissed the amended allegation as not supported by substantial evidence. Thus, as the appellate court noted, any issues regarding the amended allegation itself were moot. (*People v. McQuiston*, *supra*, 264 Cal.App.2d at p. 413.)

We agree that *McQuiston* did not deal with the precise issue that is before us. Nevertheless, it is an overarching rule that "[n]o accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits." (Pen. Code, § 960.) *McQuiston* is one instance of the

14

application of this general principle; *People v. Gary*, *supra*, 263 Cal.App.2d 192, holding that a jury waiver remains effective after a minor or typographical amendment, is another.  We conclude that Penal Code section 960 also qualifies *Tindall*.

We turn, then, to whether the amendments here were substantial, on the one hand, or minor, clerical, or typographical on the other hand.

Two of the amendments (of the second prison prior and the second prior serious felony) changed the date and place of the conviction from March 5, 2010 in Riverside County to July 24, 2013 in San Diego County.  However, they did not change the offense (assault with a deadly weapon).  Under *McQuiston*, such an amendment as to date and place is minor.  Defendant does not claim and, on this record, cannot show that these amendments had a prejudicial effect on his defense, on his decision to waive a jury trial, on his decision to admit the priors, or otherwise.

The third amendment (of the first strike prior) was different.  It changed the date, the place, *and* the offense.  In short, it substituted an entirely different conviction, involving different underlying conduct.  If this is minor, we cannot imagine what would it would take to be major.  (See *People v. McQuiston*, *supra*, 264 Cal.App.2d at p. 417 ["since the amendment related only to minor changes *and did not alter the nature of the charge alleged*, it was not error to fail to arraign defendant on the amended information or take her plea," italics added]; see also *People v. Burnett* (1999) 71 Cal.App.4th 151, 164-178 [trial court erred by allowing prosecution to amend so as to convict defendant of possession of different gun than shown at the preliminary hearing, though on same date].)

15

The People argue that defendant had notice of the true date, place, and nature of the prior convictions because he had received the "prior conviction packets" in discovery. This argument falls short, for three reasons.

First and foremost, the People do not explain why *Tindall* would not apply, even assuming defendant did have notice. *Tindall* turns on the statutory right to a trial by the same jury, not on the right to notice. At most, it could be argued that if, when defendant waived a jury trial, he already had notice that the People intended to rely on the convictions alleged in the amended information, then his waiver remained in effect even after the amendment. However, the People cite no authority for this proposition.

Second, the record does not show *when* the prosecution produced prior conviction packets to the defense. It shows only that defense counsel did receive them; he discussed them with defendant on the date set for a court trial on the priors. If the prosecution did not produce them until after the jury was discharged, then defendant was still deprived of his right to the same jury under Penal Code section 1025.

Third, even after defendant received the packets, he had no way of knowing that the prosecution intended to rely on the *actual* July 24, 2013 conviction in San Diego County for assault in prison to prove up the *alleged* April 26, 2007 conviction in Riverside County for assault with a deadly weapon. The probation report shows that defendant did in fact have an April 26, 2007 juvenile adjudication in Riverside County for a violation of Penal Code section 245, subdivision (a)(1). He would naturally have assumed that the allegation related to this.

16

The People also argue that defendant had notice that they would be relying on the conviction for assault in prison, because (1) it was alleged as a prior serious felony enhancement and a prior prison term enhancement (although with the wrong date and place), and (2) it was reflected in the prior conviction packets (with the right date and place). Defendant did not have the necessary notice, however, that they would be relying on it *as a strike*. (See *People v. Mancebo* (2002) 27 Cal.4th 735, 742-749; *People v. Nguyen* (2017) 18 Cal.App.5th 260, 265-270.)

The People also point out that the trial court told defendant that the same two priors were alleged three ways: as prison priors, as prior serious felonies, and as strikes. Moreover, defendant said he understood. However, the trial court's statement did not correctly describe the information as it stood at that point. Moreover, the statement was unclear. *Which* two priors were alleged three ways? The information alleged three different priors. Was defendant supposed to ignore the March 5, 2010 prior (later amended to a July 24, 2013 prior) and to assume it was the April 26, 2007 prior that was alleged three ways? Or vice versa? Or something else? Defendant cannot be understood as agreeing that he already knew what the prosecution would seek to charge him with later. Thus, the trial court erred by allowing the prosecution to amend the first strike prior allegation after the jury had been discharged.

The error, however, was not preserved for appeal. Trial counsel's failure to object constituted a forfeiture. (*People v. Saunders* (1993) 5 Cal.4th 580, 589-592.) In *Saunders*, the trial court erred by discharging the jury after it found the defendant guilty

17

but before it determined the truth of the prior conviction allegations. (*Id*. at p. 586.) The Supreme Court held that the defendant forfeited this error by failing to object to the discharge of the jury. (*Id*. at p. 591.) Here, by contrast, defendant had no reason to object to the discharge of the jury; at that point, he had waived a jury on the original prior conviction allegations, and the allegations had not yet been amended. Nevertheless, he had an obligation to object as soon as the error did become apparent. "'"An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method . . . .'" [Citation.]" (*Id*. at pp. 589-590.) Like the defendants in both *Tindall* and *Gutierrez*, he could have objected when the prosecution asked to amend the information.

As mentioned, defendant contends that his trial counsel's failure to object constituted ineffective assistance. "An attorney's performance is constitutionally deficient if (1) it falls below an objective standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. [Citation.] . . . 'When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation.' [Citations.]" (*People v. Grimes* (2016) 1 Cal.5th 698, 735.)

Here, there could be no satisfactory explanation for defense counsel's failure to object. (See *People v. Peyton* (2009) 176 Cal.App.4th 642, 654 [there could be no satisfactory explanation for failure to object to adding new count].) Why on earth would you let your client receive a 25-years-to-life sentence, if you could avert that simply by objecting? Certainly the People do not suggest any explanation.

In sum, then, we conclude that the trial court properly allowed the prosecution to amend the second prison prior enhancement and second prior serious felony. However, defense counsel rendered ineffective assistance by failing to object to the amendment of the first strike. Accordingly, the first strike must be stricken and we must remand for resentencing.

III

ADVISEMENTS OF CONSTITUTIONAL RIGHTS AND PENAL EFFECTS

Defendant contends that his admissions of the priors were invalid because he was not properly advised regarding either his constitutional rights or the penal effects of his admissions.

A.      *General Legal Principles.*

"[W]hen a defendant admits the truth of a prior conviction allegation that subjects him to increased punishment," (*People v. Cross* (2015) 61 Cal.4th 164, 170) "the court must inform the defendant of three constitutional rights — the privilege against

19

compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers — and solicit a personal waiver of each. [Citations.]" (*Ibid*.)**3**

The erroneous failure to do so "is not reversible per se. Instead, the test for reversal is whether 'the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances.' [Citations.]" (*People v. Cross*, *supra*, 61 Cal.4th at p. 171.)

In addition, before a defendant admits a prior conviction allegation, he or she must "be advised of 'the full penal effect of a finding of the truth of an allegation of prior convictions,'" including "the precise increase in the prison term that might be imposed, the effect on parole eligibility, and the possibility of being adjudged an habitual criminal. [Citation.]" (*People v. Cross*, *supra*, 61 Cal.4th at pp. 170-171.)

"Unlike the admonition of constitutional rights, however, advisement as to the consequences of [an admission] is not constitutionally mandated. Rather, the rule compelling such advisement is 'a judicially declared rule of criminal procedure.' [Citation.] The nonconstitutional basis of the rule has two consequences pertinent to this case.

---

**3** In *Cross*, the Supreme Court noted that, after this requirement of a tripartite advisement was put in place, it was held that the right to a jury trial on a prior conviction allegation is purely statutory, not constitutional. (*People v. Cross*, *supra*, 61 Cal.4th at p. 179.) However, it declined to determine what effect, if any, such later decisions had on "the precise contours" of the advisement requirement. (*Ibid*.) On the facts of this case, we, too, need not decide this issue.

"First, '[u]nlike an uninformed waiver of the specified constitutional rights which renders a plea or admission involuntary and requires that it be set aside, an uninformed waiver based on the failure of the court to advise an accused of the consequences of an admission . . . requires that the admission be set aside only if the error is prejudicial to the accused.' [Citation.] 'A showing of prejudice requires the appellant to demonstrate that it is reasonably probable he would not have entered his plea if he had been told about the [consequences].' [Citations.] [¶] Second, the error is waived absent a timely objection." (*People v. Walker* (1991) 54 Cal.3d 1013, 1022-1023.)

B.      *Application to These Facts*.

Defendant claims the advisements in this case were defective in five separate respects. Because the analysis differs depending on whether the trial court failed to correctly advise him (1) of his constitutional rights or (2) of the penal effect of an admission, we group defendant's five contentions into these two categories.

1.      *Failure to advise of constitutional rights*.

Defendant argues that, after the prior conviction allegations were amended, the trial court had to readvise him of his right to a jury trial and had to obtain a new waiver of that right.

As already discussed in part II, *ante*, a jury trial waiver remains effective if the information is amended in minor respects but becomes void if the information is amended substantially.

21

As also discussed, here, the amendments to the first strike were substantial. Thus, the trial court erred by failing to obtain a new waiver from defendant of his right to a jury trial on the first strike. The error, however, is moot, because we are striking the first strike. On the other hand, the amendments to the second prison prior and the second prior serious felony were minor. Accordingly, no new advisement and no new waiver were required with respect to them.

Defendant also argues that the trial court failed to advise him of his right against self-incrimination. This is true.

The People respond that the trial court did advise defendant of his right to testify; they argue that the right against self-incrimination was "[i]mplicit" in that advisement. We disagree. The trial court advised defendant that he would have the right to testify if he went to trial on the priors, and it asked if he was willing to give up that right and admit the priors. Presenting this as a binary decision left out the option of going to trial on the priors but *not* testifying.

Thus, the trial court did err. We turn to whether the record affirmatively shows that the admissions were voluntary and intelligent under the totality of the circumstances.

In *People v. Mosby* (2004) 33 Cal.4th 353, the trial court advised the defendant of his right to trial by jury, but it failed to advise him of either his right to confrontation or his right against self-incrimination. (*Id*. at pp. 357-359.) The Supreme Court nevertheless held that the totality of the circumstances demonstrated that the defendant's admission of a prior conviction was voluntary and intelligent. (*Id*. at pp. 364-365.)

Specifically regarding the right against self-incrimination, it said: "[D]efendant, who was represented by counsel, had just undergone a jury trial at which he did not testify . . . . Thus, he not only would have known of, but had just exercised, his right to remain silent at trial . . . ." (*People v. Mosby*, *supra*, 33 Cal.4th at p. 364.) It also noted that "defendant's prior conviction was based on a plea of guilty, at which he would have received . . . advisements." (*Id*. at p. 365.)

Here, similarly, defendant had just undergone a jury trial, at which he did not testify. The record also shows that he had previously admitted juvenile delinquency allegations on four separate occasions; each time, he presumably was advised of his rights, including his right against self-incrimination. (See *In re Ronald E*. (1977) 19 Cal.3d 315, 320-321 [advisement requirements apply in juvenile proceedings].) Hence, under *Mosby*, we must conclude that the failure to advise defendant of his right against self-incrimination was harmless.

### 2. *Failure to advise of penal effects*.

Defendant argues that the trial court failed to advise him that admitting the strike priors would postpone his parole eligibility. Again, this is true.

The People respond that what extended defendant's parole period was not his admission of the strikes, but rather the 15 percent limit on worktime credit that applies to violent felonies. (Pen. Code, § 2933.1.) Quite frankly, this argument makes no sense. The admission of the strikes increased defendant's minimum parole period from 7 to 50 years. The trial court was required to advise defendant of this. The fact that Penal Code

23

section 2933.1 *also* limited the application of worktime credits against defendant's sentence is irrelevant (unless, as defendant argues, it was an additional penal effect of which the trial court failed to advise him).

Next, defendant argues that the trial court erroneously suggested that both prior serious felony convictions, combined, would add only five years and that both prior prison terms, combined, would add only one year to defendant's sentence. Once again, this is true, because the trial court used the plural: "The 667.5(b) priors add an additional year if convicted of those. The serious felonies add five . . . ."

The People argue that the information correctly annotated each prison prior as "[1yr.]," and each prior serious felony as "[5 yr.]." Even so, the trial court gave defendant a misleading advisement. This argument goes more to whether defendant was prejudiced, which we discuss below.

Finally, defendant argues that the trial court's advisement was misleading with regard to the effect of admitting just one strike. Yet again, this is true. The trial court stated, "[T]he strike prior adds a life term," which suggested that the admission of even a single strike would result in a life term.

In sum, then, the trial court erred by not accurately advising defendant of these penal consequences.

Defense counsel, however, forfeited the errors by failing to object. Defendant does not contend that this constituted ineffective assistance.

24

In addition, defendant has not shown that it is reasonably probable that, if properly advised, he would not have made his admissions. His only argument on this point is with respect to the misadvisement that "[t]he strike prior adds a life term." He posits that, if he thought the prosecution could prove one strike but not the other, this advisement would have discouraged him from contesting the weaker strike. He also claims that, in fact, the prosecution could not prove the first strike, because at that point, it was still alleged as a April 26, 2007 conviction of assault with a deadly weapon in Riverside County. This goes exclusively to whether he would have admitted the first strike. Once again, however, this is moot, because we are striking that strike. There is no reason to suppose that defendant would not have made all of the other admissions.

IV

MISMATCH BETWEEN THE AMENDED ALLEGATIONS OF THE SECOND

STRIKE AND DEFENDANT'S ADMISSION OF THE SECOND STRIKE

Defendant contends that his admission of the second strike was ineffective because it did not match the allegations of that strike, as amended.

The allegations regarding the second strike, as amended by interlineation, did not include the date of the conviction. They did allege that it occurred in Riverside County (despite the cryptic references to both "Riv" and "SD") and that it was for assault with a deadly weapon. However, they also failed to allege the applicable Penal Code section.

The trial court orally ordered the second strike amended to assault with a deadly weapon in prison, on July 24, 2013, in San Diego County. By the end of the entire

25

colloquy, however, it seems to have realized that that was the *first* strike. Thus, it never actually interlineated these changes. Moreover, when it asked defendant to admit the second strike, it described it — correctly — as assault with a deadly weapon on February 25, 2010 in Riverside County. Defendant admitted it as thus described.

Defendant relies on the requirement that a strike prior must be "pled and proved." (Pen. Code, §§ 667, subd. (e), 1170.12, subd. (c).) This is too simplistic. The "pled and proved" requirement must be read against the background of general principles of pleading and proof. For example, here the strike prior was never "proved," but a defendant's formal admission eliminated the need for proof. (Pen. Code, § 1025, subd. (a); *People v. Evans* (1960) 185 Cal.App.2d 331, 334.)

In addition, a defendant can agree to be convicted of an uncharged offense, either expressly or by failing to object. (*People v. Toro* (1989) 47 Cal.3d 966, 973, 977-978, disapproved on other grounds in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3.) We see no reason why the same principle should not apply to an uncharged prior conviction. Here, by admitting the unpleaded allegations that the prior conviction occurred on February 25, 2010 and was for a violation of Penal Code section 245, subdivision (a)(1), defendant forfeited the pleading defects.

And finally, even assuming that the conviction did have to be pleaded, it was pleaded adequately. "Of course, it is elementary that every fact or circumstance necessary to constitute the crime charged must be alleged and proved, and the proof must correspond with the allegations in the pleading. But technical or trifling matters of

26

discrepancy will not furnish ground for reversal. Under the generally accepted rule in criminal law a variance is not regarded as material unless it is of such a substantial character as to mislead the accused in preparing his defense, or is likely to place him in second jeopardy for the same offense. [Citations.]" (*People v. Williams* (1945) 27 Cal.2d 220, 225-226.)

The variance here was immaterial. (*People v. Powell* (1974) 40 Cal.App.3d 107, 123-124 [variance between allegation of murder in Los Angeles County and proof of murder in Kern County was not material].) All that really mattered was that the prior conviction qualified as a strike. Arguably, good practice required that the information plead the date, place, and applicable Penal Code section so that defendant could not complain that he did not have notice of exactly what conviction the second strike was based on; by admitting it, however, he forfeited any argument based on lack of notice. He does not claim that the confusion regarding these details prejudiced him.

V

SENATE BILLS NO. 620 AND NO. 1393

Defendant contends that he is entitled to a remand so that he can be resentenced in light of Senate Bills No. 620 and No. 1393 (2017-2018 Reg. Sess.) (SB 620 and SB 1393, respectively).

As mentioned, the jury found a personal firearm use enhancement (Pen. Code, § 12022.53, subd. (b)) to be true. As a result, the trial court imposed an additional consecutive 10-year term.

27

In May 2017, when defendant was sentenced, the trial court had no power to strike a firearm enhancement under Penal Code section 12022.53.  (See Pen. Code, former § 12022.53, subd. (h), Stats. 2010, ch. 711, § 5.)  While this appeal was pending, however, SB 620 was enacted and became effective.  (Stats. 2017, ch. 682.)  As a result, a trial court now has discretion to strike a firearm enhancement.  (Pen. Code, § 12022.53, subd. (h).)

Similarly, when defendant was sentenced, the trial court had no power to strike a prior serious felony enhancement under Penal Code section 667, subdivision (a).  (See Pen. Code, former § 1385, subds. (b), (c)(2), Stats. 2014, ch. 137, § 1.)  While this appeal was pending, however, SB 1393 was enacted, effective January 1, 2019.  (Stats. 2017, ch. 1013.)  As a result, as of January 1, 2019, a trial court will have discretion to strike a prior serious felony enhancement.  (*Ibid*.)

Defendant argues that he is entitled to the benefit of these ameliorative changes in the law.  With respect to SB 620, the People concede the point; we agree.  (*People v. Robbins* (2018) 19 Cal.App.5th 660, 678.)  With respect to SB 1393, the People argue that the issue will not be ripe until January 1, 2019.   However, absent some indication of a contrary legislative intent — and the People cite none — "'[a]n amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date' [citation] . . . ."  (*People v. Dehoyos* (2018) 4 Cal.5th 594, 600.  There is no possibility that our opinion will become final before January 1, 2019.

Finally, the People do not argue that it would be an abuse of discretion to strike the firearm enhancement or the prior serious felony enhancements. Accordingly, we will remand with directions to consider whether to strike these enhancements. We express no opinion on how the trial court should exercise its discretion.

VI

DISPOSITION

The true finding on the first strike is reversed and stricken. The sentence is reversed. In all other respects, the judgment is affirmed. On remand, the trial court must resentence defendant in accordance with this opinion.

The clerk of this court is directed to send a copy of this opinion to the State Bar as soon as the remittitur issues. (Bus. & Prof. Code, § 6086.7, subd. (a)(2).)

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ
P. J.

We concur:

MILLER
J.

RAPHAEL
J.

29